**Steven Wayne REAVIS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–01–307–CR.**

Court of Appeals of Texas,
Fort Worth.

July 18, 2002.

Publication Ordered Aug. 8, 2002.

David A. Pearson, IV, Forth Worth, for Appellant.

Tim Curry, Criminal District Attorney and Charles M. Mallin, David M. Curl, Terry Lewis and Jakob Banks, Assistant District Attorneys, Fort Worth, for the State.

Panel A: CAYCE, C.J., LIVINGSTON and WALKER, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### INTRODUCTION

Appellant Steven Wayne Reavis was charged by information with the offense of theft. The jury found appellant guilty and the trial court assessed punishment at forty days' confinement. In his sole point on appeal, appellant claims the trial court abused its discretion when it admitted a videotape over his objection to its authentication. We affirm the trial court's judgment.

### BACKGROUND

On May 8, 2000, appellant went to a Sam's Club and purchased a television, welder, and a power washer. He apparently left the store and put these items into his truck. Appellant then brought the empty boxes back into the store. Appellant switched the empty TV box with an identical one containing a TV. Appellant then switched the empty welder box with one containing a welder. Appellant used the empty power washer box and put a power generator into it. A Sam's employee witnessed this conduct.

Appellant then approached a store manager and told him that his son was missing. In the midst of the confusion concerning the search for the "lost son," appellant left the store with the boxes with merchandise inside. Appellant was later apprehended in the parking lot after a struggle in which one Sam's employee was knocked out.

At trial, the State introduced the store's security videotape of the date in question which showed the front door of the store and appellant leaving, returning, and leav-

ing the final time. The tape also shows appellant, after his apprehension, being escorted back into the store. During the testimony of Armando Martinez, a Sam's loss prevention employee, the following occurred:

[PROSECUTOR:] Do you recognize this video?

[WITNESS:] Yes, sir.

[PROSECUTOR:] It's marked State's Exhibit 11. Would you please tell the jury what's on that video.

[WITNESS:] On this video is the—Mr. Reavis at the exit door exiting with his merchandise.

[PROSECUTOR:] And how was that video made?

[WITNESS:] With our 24–hour–time–lapse recorder.

. . . .

[PROSECUTOR:] Okay. Have you reviewed what's on that tape?

[WITNESS:] Yes, sir.

[PROSECUTOR:] Does it accurately depict what you saw the first time you looked at that tape?

[WITNESS:] Yes, sir.

[PROSECUTOR:] Have there been any changes or alterations on that tape?

[WITNESS:] No, sir.

The State then offered the videotape into evidence. Appellant made numerous objections to the videotape. The trial court then instructed the State to "ask some more questions." The State continued.

[PROSECUTOR:] Mr. Martinez, when did you first see that tape—physically see that tape?

[WITNESS:] After the suspect had left, the police department wanted to review the tape.

[PROSECUTOR:] Okay. And how long had the—How long was this after the apprehension of the defendant?

[WITNESS:] Approximately, like, 15 minutes after the suspect had left the building.

[PROSECUTOR:] Now explain to us, if you will, how this tape is made.

[WITNESS:] We go in every morning at 7:00 a.m. and we just put in a new tape for that day and we press record, and it records all day for 24 hours.

[PROSECUTOR:] Did you do that on [the day of the offense]?

[WITNESS:] Yes, sir.

[PROSECUTOR:] Were you the one who started that video?

[WITNESS:] Yes, sir.

[PROSECUTOR:] Is that an automatic piece of equipment that runs on its own?

[WITNESS:] We have to press record—

[PROSECUTOR:] Uh-huh.

[WITNESS:]—on it every day.

[PROSECUTOR:] Now does this tape run all day?

[WITNESS:] Yes, sir, for 24 hours.

[PROSECUTOR:] When the police asked you to see the video, how did you get it? How did you retrieve it for them?

[WITNESS:] We went upstairs to retrieve the tape. We viewed the tape upstairs with one—I believe he was a sergeant.

. . . .

[PROSECUTOR:] Are you the one who actually took the tape out of the machine?

[WITNESS:] Yes, sir.

[PROSECUTOR:] Now, have you viewed that video since that day?

[WITNESS:] Yes, sir.

The State again urged that the tape be admitted into evidence. Appellant then

re-urged his previous objections,[1] but the trial court admitted the videotape into evidence and it was played for the jury.

## DISCUSSION

 We review a trial court's ruling on authentication issues under an abuse of discretion standard. *Angleton v. State,* 971 S.W.2d 65, 67 (Tex.Crim.App.1998); *Thornton v. State,* 994 S.W.2d 845, 854 (Tex.App.-Fort Worth 1999, pet. ref'd). This standard requires an appellate court to uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Powell v. State,* 63 S.W.3d 435, 438 (Tex.Crim.App. 2001).

Rule of evidence 901 governs the authentication requirement for the admissibility of evidence and is the appropriate analysis for the authentication of recordings. TEX.R. EVID. 901; *Angleton,* 971 S.W.2d at 69; *Thornton,* 994 S.W.2d at 854–55. Subsection (a) states that the authentication requirement for admissibility of evidence is satisfied by proof sufficient to support a finding that the matter in question is what its proponent claims it is. TEX.R. EVID. 901(a). Subsection (b) provides a nonexclusive list of methods to authenticate evidence. One example given is the testimony of a witness with knowledge that a matter is what it is claimed to be. TEX.R. EVID. 901(b)(1). Another method is showing "a process or system used to produce a result and showing that the process or system produces an accurate result." TEX.R. EVID. 901(b)(9).

 Appellant specifically contends that because Mr. Martinez did not witness the events that occurred in the videotape, he cannot testify that it is an accurate depiction of what occurred. Many federal courts have rejected this type of argument using what has been called the "silent witness" analysis.[2] Over the last twenty-five years, this theory of authentication has developed in many jurisdictions and allows videos or photographs to "speak for themselves" upon introduction of evidence that the process or system that produced the photo or video is reliable. *United States v. Harris,* 55 M.J. 433, 438 (C.A.A.F.2001).

 One federal court has recognized that the list of examples given in rule 901(b) is for the purposes of illustration only, and is not meant to be a list of the only possible ways to authenticate evidence. *See* TEX.R. EVID. 901(b); *United States v. Rembert,* 863 F.2d 1023, 1026 (D.C.Cir.1988). Because that list only provides examples, the ultimate test for authentication is always whether the proponent of the evidence has made a "showing sufficient to permit a reasonable juror to find that the evidence is what its proponent claims." *Rembert,* 863 F.2d at 1027.

The Fifth Circuit has held that testimony that showed how the tape was put in the camera, how the camera was activated, the removal of the tape immediately after the offense, the chain of custody, and how the film was developed was sufficient to support the trial court's decision to admit the evidence. *United States v. Taylor,* 530 F.2d 639, 641–42 (5th Cir.), *cert. denied,* 429 U.S. 845, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976); *see also United States v. Clayton,* 643 F.2d 1071, 1074 (5th Cir.1981). Another federal court has concluded that photos

---

1. We will assume, without deciding, that the objections urged by appellant preserved his complaint for our review.

2. Because rule 901 of both the Texas and federal rules of evidence are virtually identi-cal, we may look to federal cases and commentary for guidance in interpreting rule 901. *See Wilson v. State,* 71 S.W.3d 346, 351 n. 5 (Tex.Crim.App.2002); *Coffin v. State,* 885 S.W.2d 140, 147 n. 4 (Tex.Crim.App.1994).

taken by an ATM machine were properly authenticated on even less evidence. *United States v. Fadayini*, 28 F.3d 1236, 1241 (D.C.Cir.1994). The court stated that mere testimony of a bank employee familiar with the operation of the camera and the fact that the time and date were indicated on the evidence were sufficient to authenticate the photos. *Id.*

▪ In this case, we believe there was sufficient evidence to enable a reasonable juror to conclude the videotape was what the State claimed it to be. The testimony of Mr. Martinez shows that he loaded the tape and pressed "record" on the morning of the day of the offense. Martinez further stated that he removed the videotape from the machine a mere fifteen minutes after appellant was apprehended. Then he, along with a police officer, immediately reviewed the videotape. Martinez testified that he again reviewed the videotape just prior to his trial testimony and stated that what he saw was identical to what he had seen on the tape on the day of the offense. This evidence shows the tape had not been altered or tampered with. Further, and most importantly, we note that the videotape internally indicates the date and the time of its taping. In light of the authority discussed above and this evidence, we cannot conclude the trial court abused its discretion in admitting the security videotape. Appellant's sole point is overruled.

## CONCLUSION

Having overruled appellant's sole point, we affirm the trial court's judgment.