Affirmed and Opinion filed February 17, 2005









Affirmed and Opinion filed February 17, 2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-01265-CR

____________

 

DAVID STEVEN BROWN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 209th
District Court

Harris County, Texas

Trial Court Cause No. 896,579

 



 

M E M O R A N D U M   O P I N I O N








Appellant, David Steven Brown, was charged
by indictment with aggravated robbery and entered a plea of not guilty.  The jury found appellant guilty and assessed
punishment at forty-five years’ confinement in the Texas Department of Criminal
Justice, Institutional Division. 
Appellant asserts five points of error on appeal.  In his first and second points of error, appellant
argues that the evidence is legally and factually insufficient to support his
conviction because the State failed to prove the knife used during the
commission of the robbery constituted a deadly weapon.  In his third and fourth points of error,
appellant contends that the State’s eyewitness identification is so incredible
as to render the evidence legally and factually insufficient to support his
conviction.  In his fifth point of error,
appellant alleges that the trial court committed reversible error by admitting
an edited copy of a video surveillance tape into evidence because the State
failed to establish that the initial recording was reliable.  We affirm. 

Background

On the evening of November 25, 2001,
Norisa Reed was working in the courtesy booth of a grocery store in Harris
County, Texas.  When the store closed,
employees checked the entire store to make sure no customers remained
inside.  Then Helen Fountain, the acting
manager, locked the doors.  The cashiers
brought their registers to Reed in the secured courtesy booth for Reed to count
the money and lock it in the safe. 
Afterwards, following customary procedure, Fountain unlocked the front
door and let all of the employees out of the store.  Only she and Reed remained inside. 

Suddenly, a man approached Reed from
behind and said, “black girl, black girl, lay on the ground.”  Reed turned around and saw a man wearing a
ski mask holding a long knife with a brown handle.  Afraid the man would stab her, Reed laid down
on her side in a fetal position. 
Fountain subsequently walked into the booth and said, “oh, my gosh, what
is going on?”[1]  The man told Fountain to get the money out of
the safe.  Fountain emptied the safe, put
the money in a bag, and gave it to the man. 
The man told Fountain to let him out of the store, which she did.[2]
Reed called 9-1-1.








Kenneth Belvin, a sacker, was standing
outside approximately ten to thirteen feet away from the front door waiting for
his mother to pick him up.  Belvin saw a
green Ford Explorer driven by a fairly heavy female in her mid-sixties with
light gray hair pull up to the front of the store.[3]  Shortly thereafter, Belvin saw appellant exit
the store with a brown paper bag and get into the Ford Explorer, which drove
away.[4]  

Terry Waokup, the store’s supervising
manager,[5]
heard about the robbery and came to the store to stop the surveillance tape and
give it to the police.  After several
unsuccessful attempts to eject the tape, the video recorder was taken apart and
the tape was removed with some damage to the casing and some electric tape
sticking out. 

The twenty-four hour tape, with a new
outer casing, was admitted into evidence along with an edited version that
showed only the actual occurrence.  The
videotape showed the robber pulling off his mask.  William Dybala, the store’s director, and
Waokup both testified that they had seen appellant many times at the store and
that both believed appellant is the man on the videotape.[6]


Sufficiency of
the Evidence

In his first four points of error,
appellant argues that the evidence is legally and factually insufficient to
support his conviction for aggravated robbery. 
We disagree.








In a legal sufficiency review, we view all
of the evidence in the light most favorable to the verdict and then determine
whether a rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt.  See
Jackson v. Virginia, 443 U.S. 307, 319 (1979).  In a factual sufficiency review, we view all
of the evidence in a neutral light.  We
will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that
the standard of proof beyond a reasonable doubt could not have been met.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  

Knife as a Deadly Weapon

In his first and second points of error,
appellant argues the evidence is legally and factually insufficient to support
his conviction because the State failed to prove that the knife used
constituted a deadly weapon.[7]  We disagree.

A knife is not a deadly weapon per
se.  Thomas v. State, 821 S.W.2d
616, 620 (Tex. Crim. App. 1991). 
However, the State may show a knife to be a deadly weapon by
demonstrating the manner of its use, its size and shape, and its capacity to
produce death or serious bodily injury.  Hawkins
v. State, 605 S.W.2d 586, 588 (Tex. Crim. App. 1980).  In ascertaining whether a particular knife is
a deadly weapon by its actual or intended usage, we consider several factors
articulated by Texas courts, including: (1) the size, shape, and sharpness of
the knife; (2) the manner of its use or intended use, such as verbal threats
and gestures; (3) the nature or existence of inflicted wounds; (4) the
testimony of the knife’s life-threatening capabilities; and (5) the physical
proximity of the accused and the victim. 
See Thomas, 821 S.W.2d at 620; Garcia v. State, 17 S.W.3d
1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d); Wade v. State,
951 S.W.2d 886, 892 (Tex. App.—Waco 1997, pet. ref’d).








In support of his legal and factual
sufficiency challenge, appellant makes four arguments.  First, he argues that the knife used during
the commission of the robbery was not recovered; however, the State is not
required to offer the deadly weapon into evidence to meet its burden of
proof.  See Victor v. State, 874
S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d) (citing Morales
v. State, 633 S.W.2d 866, 868 (Tex. Crim. App. [Panel Op.] 1982)).  Appellant also points out that no injuries
were caused by the weapon.  Texas law
does not require that a knife used in the commission of a crime actually
inflict any wounds.  Miller v. State,
846 S.W.2d 365, 369 (Tex. App.—Houston [14th Dist.] 1992, no pet.); Birl v.
State, 763 S.W.2d 860, 863 (Tex. App.—Texarkana 1988, no pet.); see also
Brown v. State, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986).  Furthermore, although appellant argues that
there was no specific testimony regarding the length of the blade or its
relative sharpness, the record reflects that there was testimony from
Reed that the knife was “long and had a brown handle.”  

Finally, appellant argues that no specific
threats were made during the commission of the offense.  We conclude that, after hearing the
complainant’s testimony, the jury was fully warranted in concluding that
appellant’s use of the knife constituted an implied threat.  See Tisdale v. State, 686 S.W.2d 110,
115 (Tex. Crim. App. 1984) (finding that appellant’s use of the knife in the
commission of a robbery could properly be perceived by the fact finder as an
implied threat).  The evidence shows that
appellant approached Reed from behind and, within a close proximity, said,
“black girl, black girl, lay on the ground.” 
Appellant was wearing a ski mask over his face and was holding a long
knife with a brown handle.  Reed said she
was scared and followed appellant’s instructions because she was afraid he
would stab her.  There is nothing in the
record to suggest that the jury’s resolution of this conflicting testimony was
not reasonable.  Id.

Viewing the evidence in a light most
favorable to the verdict, we find sufficient evidence to show beyond a
reasonable doubt that appellant used or exhibited a deadly weapon during the
offense.  Similarly, after considering
the evidence in a neutral light, the evidence is not too weak to support the
finding of guilt beyond a reasonable doubt, and contrary evidence was not so
strong to conclude the reasonable doubt standard could not be met.  Appellant’s first and second points of error
are overruled.

Credibility
of State’s Witnesses








In his third and
fourth points of error, appellant argues the evidence is legally and factually
insufficient to support his conviction because the State’s witnesses were not credible.  A careful review of the record, however,
reveals that the jury’s verdict was supported by the evidence adduced at trial.


The evidence shows that an employee was
standing approximately ten to thirteen feet outside the store’s front
door.  The employee saw a woman drive a
vehicle to the front of the store and saw appellant exit the store carrying a
bag.  The employee was unable to see
appellant’s face, but said he was familiar with appellant and recognized him
from his hair, his snakeskin boots, and his clothes.  Several witnesses also testified that
appellant’s girlfriend was Fountain, the acting manager on the night of the
incident.  The employees’ description of
the getaway car and the female driver matched testimony describing appellant’s
mother and her vehicle.  A surveillance
videotape showed appellant carrying a bag and taking off his ski mask.  The store’s director and the store’s
supervising manager both testified that they had seen appellant many times at
the store and both believed appellant to be the man on the videotape.

Our evaluation should not intrude upon the
fact-finder’s role as the sole judge of the weight and credibility of the
evidence.  Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 
Moreover, “[a] decision is not manifestly unjust merely because the jury
resolved conflicting views of the evidence in favor of the State.”  Id at 410. 
Viewing the evidence in a light most favorable to the verdict, we find
sufficient evidence to find appellant guilty beyond a reasonable doubt.  After considering the evidence in a neutral
light, we conclude that the evidence is not too weak to support the finding of
guilt beyond a reasonable doubt, and that contrary evidence was not strong
enough to conclude the reasonable doubt standard could not be met.  The evidence is therefore legally and
factually sufficient to support appellant’s conviction.  Appellant’s third and fourth points of error
are overruled.

Surveillance Videotape 








In his fifth point
of error, appellant contends that the trial court committed reversible error by
admitting an edited copy of a surveillance videotape into evidence.  Specifically, appellant argues that the State
failed to meet the test set forth in Edwards v. State to establish that
the initial recording was reliable because the outside casing of the original
tape had been damaged and the date and time on the tape were incorrect.  551 S.W.2d 731, 733 (Tex. Crim. App.
1977).  We note that the test used in Edwards
was superceded by the adoption of the Texas Rules of Evidence.  Leos v. State, 883 S.W.2d 209, 211–12
(Tex. Crim. App. 1994). 

Texas Rule of Evidence 901 governs
authentication of evidentiary items, including videotapes.  See Tex.
R. Evid. 901 & 1001(2); Kephart v. State, 875 S.W.2d 319,
321–22 (Tex. Crim. App. 1994), overruled on other grounds, Angleton
v. State, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998).  Rule 901 provides in pertinent part:

(a) General Provision. The
requirement of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a finding that the
matter in question is what its proponent claims. (b) Illustrations. By way of
illustration only, and not by way of limitation, the
following are examples of authentication or identification conforming with the
requirements of this rule:

(1) Testimony of witness with
knowledge.  Testimony that a matter
is what it is claimed to be.

* 
*  *

(9) Process or system.  Evidence describing a process or system used
to produce a result and showing that the process or system produces an accurate
result.         

Tex. R. Evid. 901(a), (b).  We review the trial court’s ruling on
authentication issues under an abuse of discretion standard.  Angleton, 971 S.W.2d at 67.  The standard requires an appellate court to
uphold an admissibility decision made by a trial court when the decision is
within the zone of reasonable disagreement. 
Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).  Under this standard, we find that the trial
court did not abuse its discretion in admitting the videotape.  Page v. State, 125 S.W.3d 640, 648–49
(Tex. App.—Houston [1st Dist.] 2003, pet ref’d); Reavis v. State, 84
S.W.3d 716, 719–20 (Tex. App.—Fort Worth 2002, no pet.).








As to the allegation that the tape was not
reliable due to its damaged condition, the record reflects that after being
notified of the robbery, Waokup came to the store, stopped the videotape, and
watched five to ten minutes of the tape to see if it had captured the
incident.  Waokup, Dybala, and Deputy
Pool were present when the videotape was removed from the recorder in the
store’s surveillance room.  All three
witnesses testified that the outside cannister of the videotape was
damaged.  The witnesses also testified
that the reel of tape inside was twisted and stretched in one section but that
they did not believe that the tape itself was damaged. 

Gary Johnson, an investigator for the
Harris County District Attorney’s Office, also offered authentication
testimony.  Johnson testified that the
outside cannister of the tape had been damaged but the tape itself had not
been.[8]  Johnson replaced the damaged canister with an
undamaged canister and left the original reel of tape.  The original reel of tape, State’s Exhibit
4-A, contains twenty-four hours of coverage. 
Johnson re-recorded the actual occurrence from State’s Exhibit 4-A into
a twenty-minute version which was admitted as State’s Exhibit 6 and shown to
the jury.  Johnson testified that State’s
Exhibit 6 is a true and accurate representation of the original.  Similarly, Waokup viewed State’s Exhibits 4-A
and 6 and testified that State’s Exhibit 6 is a portion of what is contained in
State’s Exhibit 4-A.  We find that the
above testimony meets the requirements of Rule 901.








Appellant also argues that the videotape
is not reliable because the date and time on the tape were inaccurate.  Specifically, appellant contends that since
the evidence showed that he had been known to visit the store on previous
occasions, the footage of him leaving the store could have been from a time
other than the time of the robbery. 
Waokup estimated the date was “way off”[9]
and that the time on the videotape was off by twenty minutes based on when he
arrived at the store.  However, he also
testified that, since the cameras taped in a loop, he could tell which day he
was watching by who was working in the store. 
Waokup testified that he knew he was watching the tape of the night of
the crime because he could see himself enter the store, heading towards the
video recorder to turn the tape off and give it to the police.

In the tape, a male figure is seen exiting
the store, pulling a mask off his head and stuffing it into a bag he is
carrying.  Shortly thereafter, Waokup can
be seen entering the store.  We find
that, given Waokup’s testimony regarding his knowledge of the video recording
process, the crime, his activities in the store after the crime, and his
familiarity with appellant, his testimony meets the requirements of Rule
901.  See Page, 125 S.W.3d at
648–49; Reavis, 84 S.W.3d at 720. 
That is, because Waokup is a witness with knowledge of the store, the
tape, the taping process, and the appellant, his testimony is sufficient to
enable a reasonable jury to conclude that the tape was what the State claimed
it to be.  See Page, 125 S.W.3d at
648–49; Reavis, 84 S.W.3d at 720. 
Furthermore, although appellant could have been in the store a number of
times, we doubt that it was his common practice to exit the store pulling a
mask off of his head.  Appellant’s final
point of error is thus overruled.

We affirm the judgment of the trial court.


 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed February 17, 2005.

Panel
consists of Chief Justice Hedges and Justices Hudson and Frost.

Do
Not Publish — Tex. R. App. P.
47.2(b).











[1]  Reed testified
that Fountain seemed to be acting. 





[2]  Reed testified
that she found it strange that the man asked Fountain to let him out of
the store because he should have had no way to know that she had the keys.  





[3]  The evidence
shows that appellant’s mother is in her late fifties or early sixties, is short
and stocky, and drives a green Ford Explorer. 





[4]  Belvin
testified that he recognized appellant because he had met and had had a
conversation with him in the past.  The way in which appellant carried
the bag of money prevented Belvin from seeing appellant’s face; however, Belvin
was able to identify appellant because of his long salt-and-pepper-colored hair,
his clothes, and his snakeskin boots.     





[5]  Waokup
testified that he had worked at the store for thirty-two years and that he has
been the manager for the last twenty-eight or twenty-nine years.





[6]  Dybala
believed the man on the videotape was appellant because it looked like his
profile. 





[7]  A deadly
weapon is anything manifestly designed, made, or adapted for the purposes of
inflicting serious bodily injury; or, anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury.  Tex.
Pen. Code Ann. § 1.07(a)(17)(A)&(B) (Vernon Supp. 2004).





[8]  Johnson
testified that a possibility existed that the original tape had had a
“bad spot” on it, but that the spot would not have been at the time of the
crime and thus would not have had any relevance to the case.  Johnson also testified that, had the relevant
portions of the tape been altered, spliced, or damaged in any way, he would
have been able to tell.  Johnson
testified that he did not observe any evidence of such alteration or damage.





[9]  Waokup
testified that the date stamp showed an August date.  The crime occurred in November.