# NO. 12-08-00012-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BEVERLY SANFORD,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Beverly Sanford appeals her conviction for delivery of between one and four grams of cocaine, for which she was sentenced to imprisonment for twenty years. Appellant raises four issues on appeal. We affirm.

### BACKGROUND

Appellant was charged by indictment with delivery of between one and four grams of cocaine. Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, Tyler Police Officer Gerald Frank Brewer testified on the State's behalf. Brewer testified that he worked as an undercover narcotics officer. Brewer stated that it was common for police to use confidential informants to make drug purchases from suspected drug dealers while police employ surveillance techniques. Brewer further stated that Roy Dewberry acted as a confidential informant in the case at hand. Brewer testified that on April 13, 2007, Dewberry, under the direction of police officers, made a "crack" cocaine purchase at the "Mansion," which was a house in which the owner permitted multiple dealers to sell drugs. Brewer further testified that officers searched Dewberry and

his vehicle before he made the drug buy. Brewer stated that officers gave Dewberry money to make the buy and outfitted him with covert audio and video surveillance equipment. Brewer further stated that he and Officer Ronnie Tekel listened to the live audio feed from Dewberry's surveillance equipment while Dewberry was inside the Mansion making the drug purchase. Brewer testified that after Dewberry exited the Mansion, officers took him to a safe location, at which time he gave them three red Ziploc® baggies containing crack cocaine.

Thereafter, the State sought to admit the surveillance video made by Dewberry. Appellant objected to the video's admission arguing that it was not properly authenticated because Brewer did not monitor the video live as it was being made[1] and, thus, could not testify that the video accurately represented the scene depicted therein. The trial court overruled Appellant's objection.

Dewberry also testified on behalf of the State. Dewberry testified that he knew Appellant as a person who sold crack cocaine in Smith County, Texas. Dewberry further testified that he, at the request of the Tyler Police Department, was fitted with an audio/video recording device and went to the "Mansion" to make contact with Appellant to purchase cocaine. Dewberry stated that once he was inside the Mansion on the day in question, he purchased three rocks of crack cocaine from Appellant for fifty dollars each.[2] Dewberry further stated that upon leaving the Mansion, he gave the cocaine he purchased to the police officers with whom he was working.

Tekel testified as the State's next witness. Tekel testified that he is a narcotics detective for the Special Investigative Unit of the Tyler Police Department. Tekel further testified concerning Dewberry's drug purchase as a confidential informant on behalf of the Tyler Police Department on the day in question. Tekel's testimony aligned itself closely with the account given by Brewer. Tekel stated that he had previously reviewed the cover video made by Dewberry. Tekel further testified that Appellant is seen on the video tape selling Dewberry one hundred fifty dollars worth of crack cocaine.[3]

---

[1] The record reflects that both Brewer and Tekel watched the video at a later time.

[2] Dewberry later testified that the video depicted Appellant selling him three rocks of crack cocaine.

[3] Tekel later testified that the amount of crack cocaine Appellant sold to Dewberry was between one and four grams.

Following Tekel's testimony, both parties rested. Ultimately, the jury found Appellant "guilty" as charged. The matter subsequently proceeded to a trial on punishment.

At the trial on punishment, Brewer again testified on the State's behalf. Brewer testified that on April 24, 2007, he and Tekel again used Dewberry to buy crack cocaine from Appellant at the Mansion. Brewer testified that, similar to the April 13 transaction, Dewberry made a covert video of the April 24 transaction while the officers listened to the audio feed remotely. Appellant objected to the admission of the video on the same grounds that he objected to the April 13 video at the trial on guilt-innocence. The trial court overruled Appellant's objection. Thereafter, Dewberry testified that he purchased crack cocaine from Appellant on April 24, 2007 on behalf of the Tyler Police Department.

Ultimately, the jury assessed Appellant's punishment at imprisonment for twenty years. The trial court sentenced Appellant accordingly, and this appeal followed.

### ADMISSIBILITY OF SURVEILLANCE VIDEO

In her first issue, Appellant argues that the trial court erred in admitting the April 13 surveillance video because the video was not properly authenticated. Specifically, Appellant contends that because Brewer did not view the live video feed, he could not testify that the video depicted the scene as it existed at the time in question.

We review the trial court's decision to admit evidence for abuse of discretion. *See Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We will not reverse the trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Id.* The ultimate test for authentication is always whether the proponent of the evidence has made a showing sufficient to permit a reasonable juror to find that the evidence is what its proponent claims. *Reavis v. State*, 84 S.W.3d 716, 719 (Tex. App.–Fort Worth 2002, no pet.); *see* TEX. R. EVID. 901(a). Thus, the trial court does not abuse its discretion in admitting evidence where it believes that a reasonable juror could find the evidence has been authenticated or identified. *Fluellen v. State*, 104 S.W.3d 152, 161 (Tex. App.–Texarkana 2003, no pet.).

In *Reavis*, the Fort Worth Court of Appeals considered the question Appellant now poses to us. The court held that the trial court did not abuse its discretion in admitting into

evidence a security videotape where the sponsoring witness had not personally witnessed the events depicted on the videotape. *Id.* at 720. There, the sponsoring witness testified that (1) on the morning of the day of the offense, he loaded the videotape and pressed "record," (2) he removed the videotape from the machine shortly after the appellant was apprehended, (3) he viewed the tape with a police officer immediately after the appellant's apprehension, (4) he reviewed the videotape just prior to his trial testimony, and (5) what he saw was identical to what he had seen on the tape on the day of the offense, which indicated that the tape had not been subject to tampering. *Id.* The court held that such evidence was sufficient to enable a reasonable juror to conclude the videotape was what the State claimed it to be.[4] *Id.*; s*ee also* **Page v. State**, 125 S.W.3d 640, 648 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd) (videotape sufficiently authenticated by testimony that (1) digital recording system recorded images from sixteen video cameras and automatically saved those images onto a computer hard drive, (2) witness obtained the digital recording system's hard drive shortly after robbery and reviewed the recording of the robbery with police officers, (3) witness copied recording of the robbery onto a videotape and gave it to officers, (4) witness reviewed the videotape before trial, and (5) video tape had not been altered in any way).

In the instant case, Brewer testified that he outfitted Dewberry with the digital audio/video recording device and a transmitter. Brewer further testified that he and Tekel monitored the audio feed from the recording device worn by Dewberry in real time while Dewberry was in the Mansion. Brewer stated that when Dewberry left the Mansion, they took him to a safe location and removed the audio/video surveillance equipment from his person. Brewer further stated that he interviewed Dewberry immediately following the transaction and compared Dewberry's answers to what he heard on the live audio feed. Brewer testified that after interviewing Dewberry, he returned to the police station and watched the video. Brewer further testified that as he watched the video, he compared what he saw on the video both with what he heard via the live audio feed and what Dewberry told him immediately following the transaction. Thus, according to Brewer, based on his review of the April 13 video as well as the totality of the aforementioned information, the exhibit was a true and accurate copy of what was contained on the camera

---

[4] The court further noted that the videotape internally indicated the date and time of its taping.

supplied by the Tyler Police Department and, further, truly and accurately depicted Dewberry's movements inside the Mansion on the day in question.

Having considered Brewer's testimony in light of the authority directly on point, we hold that such evidence was sufficient to enable a reasonable juror to conclude that the video was what the State claimed it to be. As such, we are unable to conclude that the trial court abused its discretion.

Further, even assuming arguendo that the video at issue was not properly authenticated, the record does not reflect that Appellant was harmed as a result of its admission. Error is harmless when evidence of the same acts is admitted later at trial without objection. *See Matthews v. State*, 152 S.W.3d 723, 730 (Tex. App.–Tyler 2004, no pet.) (citing *Woolls v. State*, 665 S.W.2d 455, 470 (Tex. Crim. App. 1983)). In the instant case, subsequent to the trial court's admission of the video, Tekel testified without objection that Appellant is seen on the video selling one hundred fifty dollars worth of crack cocaine to Dewberry. Thus, we hold that the error, if any, of which Appellant complains was harmless.

Appellant's first issue is overruled.

### CORROBORATION OF CONFIDENTIAL INFORMANT TESTIMONY

In her second issue, Appellant argues that, absent the admission of the video, there was insufficient evidence to corroborate Dewberry's testimony. The linchpin of Appellant's argument underlying her second issue is that the video was improperly admitted. Indeed, in her briefing of this issue, Appellant concedes that the video connects Appellant to the transaction at issue.[5] In our analysis of Appellant's first issue, we determined the trial court did not abuse its discretion in admitting the video evidence at issue. We further noted that, even assuming arguendo that the video was improperly admitted, its admission was harmless. Therefore, since the video at issue was properly admitted, and, as Appellant concedes, connects Appellant to the transaction at issue, we hold that there is sufficient evidence to corroborate Dewberry's testimony. Appellant's

---

[5] *See Malone v. State*, 253 S.W.3d 253, 258 (Tex. Crim. App. 2008) (in evaluating sufficiency of evidence corroborating covert agent testimony, reviewing court must exclude testimony of covert agent from consideration and examine remaining evidence to determine whether there is evidence that tends to connect defendant to commission of offense); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.141 (Vernon 2005).

second issue is overruled.

## JURY INSTRUCTION ON CORROBORATION OF
## CONFIDENTIAL INFORMANT'S TESTIMONY

In her third issue, Appellant argues that the trial court erred by denying her request that a corroboration instruction be given in the jury charge. As the State opines in its brief, the record fully supports that Dewberry was acting covertly on behalf of a law enforcement agency. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141(a) (Vernon 2005). As such, the trial court's refusal to give a corroboration instruction was error. *See **Herron v. State***, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002) (if prosecution witness is accomplice as a matter of law, trial court is under duty to instruct jury accordingly, and failure to do so is error); ***Malone***, 253 S.W.3d at 257–58 (applying analysis under "accomplice-witness sufficiency corroboration standard" to the "covert-agent rule").

**Harm Analysis**

Having determined that there was error in the charge, we must now decide if sufficient harm was caused by the error to require a reversal. ***Castillo v. State***, 7 S.W.3d 253, 260 (Tex. App.–Austin 1999, pet. ref'd) (citing ***Hutch v. State***, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). A jury charge error must be reviewed for harm under article 36.19 of the Texas Code of Criminal Procedure as interpreted by ***Almanza v. State***, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

As with an instruction under the accomplice witness rule, a court's failure to instruct the jury pursuant to article 38.141 can be rendered harmless by evidence apart from the confidential informant's testimony where that evidence fulfills the purpose an instruction is designed to serve. *See **Herron***, 86 S.W.3d at 632. A harmless error analysis for the omission of such an instruction should be flexible, taking into account the existence and strength of any noninformant[6] evidence and the applicable standard of harm. ***Id.*** In determining the strength of a particular item of nonaccomplice evidence, we examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the crime. ***Id.***

---

[6] References to an "informant" necessarily means a confidential informant pursuant to article 38.141.

Under ***Almanza***, error properly preserved by an objection will require reversal as long as the error is not harmless. *See **id.***; ***Almanza v. State***, 686 S.W.2d at 171. This has been interpreted to mean any harm regardless of degree. *See **Hutch***, 922 S.W.2d at 171. Where error has been preserved, the noninformant evidence must be stronger than what is required in the egregious harm context. *See **Herron***, 86 S.W.3d at 632. Thus, the reliability inquiry may be satisfied if (1) there is noninformant evidence and (2) there is no rational and articulable basis for disregarding the noninformant evidence or finding that it fails to connect the defendant to the offense.

In the case at hand, Appellant has made a rational and articulable challenge to the admissibility of the video evidence. Nonetheless, we cannot disregard Tekel's succinct, definite, and unchallenged testimony that he observed the video of Dewberry purchasing crack cocaine from Appellant. Moreover, both Brewer and Tekel testified that they searched Dewberry and his vehicle prior to his entering the Mansion. Both officers further testified that they outfitted Dewberry with an audio-video recording device and monitored the live audio feed during the entirety of the time period in question. The officers stated that Dewberry was given a specific amount of money with which to conduct the transaction and make a payment to "the house." The officers further stated that they searched Dewberry immediately following the transaction, recovered the crack cocaine from him, and interviewed him to assure that what he told them accurately reflected what they heard via the live audio feed.

Even if we were to conclude that there was a rational basis for disregarding the video evidence, there is no such basis in the record for doubting the reliability of the respective testimony offered by Brewer and Tekel. As such, we hold that the trial court's erroneous refusal to submit an instruction in this instance was harmless. Appellant's third issue is overruled.

### ADMISSIBILITY OF SURVEILLANCE VIDEO AT TRIAL ON PUNISHMENT

In her fourth issue, Appellant argues that the trial court erred in admitting the April 24 surveillance video which was not properly authenticated because Brewer testified that he did not observe the live feed of the video. As before, we review the trial court's decision to admit evidence for abuse of discretion. *See **Torres***, 71 S.W.3d at 760. We

again note that the ultimate test for authentication is always whether the proponent of the evidence has made a showing sufficient to permit a reasonable juror to find that the evidence is what its proponent claims. *Reavis*, 84 S.W.3d at 719; *see* TEX. R. EVID. 901(a).

Here, Brewer testified as the State's sponsoring witness. Brewer acknowledged that he had testified in the guilt-innocence phase of the case the day before and stated that, apart from the day's worth of experience he had acquired since his previous testimony, everything else was the same.[7] Brewer testified that he and Tekel again met with Dewberry for the purpose of sending him back to the Mansion to contact Appellant and make a purchase of crack cocaine. According to Brewer, on this occasion, he and Tekel gave Dewberry two hundred sixty dollars with which to purchase the cocaine.[8] Brewer stated that the video would depict (1) the twenty minute drive to the Mansion, (2) Dewberry's entry into the home and conversation with Appellant, (3) the drug transaction between Dewberry and Appellant, and (4) Dewberry's departure from the Mansion. Brewer further stated that when Dewberry left the Mansion, he had crack cocaine in his possession that he did not have before he went to the Mansion. Brewer testified that he had viewed the surveillance video, that it truly and accurately depicted the transaction between Dewberry and Appellant, and that it was made by a device capable of capturing both audio and video. Brewer testified that he monitored the live audio feed of the transaction, but not the live video feed. Brewer further testified that he was able to compare the audio he heard in real time with the video when he viewed it after the fact.

Having considered Brewer's testimony given during both the guilt-innocence and punishment phases of trial, we hold that such evidence is sufficient to enable a reasonable juror to conclude that the video was what the State claimed it to be. *See Reavis*, 84 S.W.3d at 719–20; *see also Page*, 125 S.W.3d at 648.

Moreover, subsequent to the trial court's admission of the video, Dewberry testified

---

[7] During the guilt-innocence phase of the trial, Brewer testified that on every occasion, when the confidential informant returns from the drug transaction, officers interview him and compare what he tells them to what they heard via the live audio feed. Thereafter, officers go to the police department and watch the video and compare the video to what they heard as well as what the informant told them. *See, e.g., Rayme v. State*, 178 S.W.3d 21, 27 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (evidence admitted in the guilt-innocence phase of trial may be considered by the jury during the punishment phase regardless of whether state moves to re-admit it.).

[8] Ten dollars of the two hundred sixty dollars given to Dewberry was to be used to "pay the house."

without objection that he returned to the Mansion on April 24, 2007 at the direction of the

Tyler Police Department and purchased crack cocaine from Appellant.[9]  Thus, we hold that

the error, if any, of which Appellant complains, was harmless.  *See **Matthews***, 152 S.W.3d

at 730.

Appellant's fourth issue is overruled.

## DISPOSITION

Having overruled Appellant's issues one, two, three, and four, we ***affirm*** the trial

court's judgment.


**JAMES T. WORTHEN**
Chief Justice


Opinion delivered September 30, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)

---

[9]  Article 38.141 does not require, and Appellant has not argued, that a confidential informant's testimony offered during a trial on punishment must be corroborated.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.141(a).