02-11-161-CR










 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-11-00161-CR

 

 


 
 
 Jose Ignacio Razo
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 3 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
Jose Ignacio Razo appeals his conviction and sentence for aggravated robbery.  In
three issues, Razo contends that his double jeopardy rights were violated; that
the evidence is legally insufficient to support his conviction; and that the
trial court erred during the punishment phase by allowing the State to
introduce a videotape from a convenience store.  We will affirm.

II.  Background

          On
the night of the alleged robbery, eighty-five year-old Frank Burk made six
9-1-1 calls from his home between 1:50 a.m. and 2:20 a.m.  When officers
arrived, Burk’s eyes were swollen shut, and he was moving slowly, had trouble
hearing, and appeared to have been beaten.  The door from Burk’s garage to his
house had been busted in, his house was ransacked, and there was blood
throughout the house.

          A
few hours later, police stopped Razo while he was driving a car with two other
occupants.  After police found a revolver and some of Burk’s possessions in the
vehicle, all three occupants were placed in custody.  Razo was charged with
aggravated robbery, and this case eventually went to trial.  Razo’s first trial
ended in a mistrial.

          When
Razo’s second trial began, Razo asserted that jeopardy had attached at the
previous trial and asked the trial court to dismiss the case, but the court
denied Razo’s motion on double jeopardy.  After hearing the evidence, the jury
found Razo guilty.

          During
the punishment phase, the State introduced evidence to support its theory that
Razo was involved in three additional robberies the same night that Burk had
been attacked and robbed.  One such piece of evidence was a security videotape
from a convenience store near Burk’s house—Joe’s Future Food Mart.  The State
called store employee Mahawattage (“Harry”) Don Dhanushka to authenticate the
videotape.  Using the videotape and Harry’s testimony, the State purported to
show that Razo’s cousin was an employee at Joe’s Future Food Mart and was
working while the store was robbed.  Over Razo’s objection, the videotape was
admitted in evidence.  After hearing all of the evidence, the jury sentenced
Razo to thirty-five years in prison.

III.  Discussion

          A.      Double
Jeopardy

          In
his first issue, Razo contends that his double jeopardy rights were violated by
the State’s subsequent prosecution after having intentionally provoked Razo
into moving for a mistrial.  Specifically, Razo argues that the trial court
abused its discretion by finding that the State did not intend to provoke Razo
into moving for a mistrial by eliciting responses from witnesses that alluded
to extraneous offenses.  We disagree.

          Pursuant
to pretrial motions in limine in Razo’s trials, the State was prohibited from
referencing, commenting on, or arguing the existence of any extraneous offenses
during the guilt-innocence phases of both trials.  At his first trial, Razo
made multiple requests for a mistrial based on four different instances in
which the State’s witnesses allegedly referred to extraneous offenses.  The
first instance occurred on redirect examination during an exchange between the
prosecutor and Burk about the alleged attack:

[Prosecutor]:  When
they were hitting you, did you get knocked out?

 

[Burk]:  Yeah.  In
other words, just it all happened so sudden.  I mean, it [was] just one of
those things that I wasn’t looking forward to.

 

[Prosecutor]:  Oh, I
bet you weren’t.

 

[Burk]:  It[‘s] just
that now -- if like what -- they just came from another
house.

 

[Prosecutor]:  Well,
let’s just -- let’s -- just talk about you right now.

 

          Outside
the presence of the jury, defense counsel then objected to Burk’s comment that
the intruders had just left from another house.  Razo also argued that the
prosecutor’s instruction to “just talk about [Burk] right now” further alluded
to the presence of other offenses.  After continued disagreement, the court
sustained Razo’s objection, instructed the jury to disregard Burk’s response,
and denied the motion for mistrial.

          Razo’s
second objection to an alleged reference to extraneous offenses followed an
exchange between the prosecutor and crime scene officer Christopher Bain
regarding Bain’s response to dispatch’s report of the alleged robbery:

[Prosecutor]:  So
when you got the call, what did you do?

 

[Bain]:  Well, I
started driving towards the first location until they diverted me.  So then I
drove to the second location.  I believe it was at Hart --

 

          Again
outside the presence of the jury, Razo objected to Bain’s response on the basis
that he alluded to an extraneous offense.  But the prosecutor explained that
the two locations Bain had referred to were connected to the same robbery, and Razo
withdrew his objection.

          Razo’s
third objection came during direct examination of Detective Kyle Sullivan, who
had been assigned to investigate the robbery the night of the offense:

[Prosecutor]:  Why
were you interested in their clothing?

 

[Sullivan]:   Well, I
knew that on one particular case --

 

          Razo
immediately objected and requested a mistrial, arguing that Sullivan’s
statement was nonresponsive and that it referred to extraneous offenses.  Again
the prosecutor disagreed and argued to the contrary, adding that he had already
instructed Sullivan to only talk about the case at hand.

          Next
the court allowed the prosecutor to go through his intended line of questioning
with Sullivan outside the presence of the jury so that the court and Razo would
know what the prosecutor was intending to illicit from the witness.  After this
line of questioning, the prosecutor and the court made clear that all the
witnesses had previously been instructed not to talk about any other extraneous
offenses and that the witnesses should only talk about the case at hand.  Back
in the presence of the jury, the court sustained Razo’s objection and denied his
motion for mistrial.

          The
fourth and final incident followed an exchange between the prosecutor and
Officer Kevin Capps, who assisted Detective Sullivan with searching Razo’s
vehicle after it had been impounded:

[Prosecutor]:  While
you were there, was there anyone else present with Detective Sullivan?

 

[Capps]:  Detective
Sullivan was accompanied by Mr. Burk who at that time was identified as one of
the victims.

 

          Razo
then interrupted the prosecutor’s next question to raise yet another
nonresponsiveness objection.  Outside the presence of the jury, defense counsel
requested a mistrial, arguing that Capps’s reference to “one of the victims”
alluded to an extraneous offense.  Noting that the prosecution had been warned
several times and that there was a motion in limine that had been violated, the
court granted the defense’s motion for mistrial.

          Before
the proceedings ended, the prosecutor asked for and received a ruling from the
court that he had not acted intentionally and that he had complied with the
court’s orders regarding instructions to his witnesses.  Although the
prosecutor continued to try to persuade the court to deny Razo’s motion for
mistrial, the court confirmed that the mistrial was granted and ended the
proceedings.

                   1.       Standard
of Review

          In
reviewing a trial court’s ruling that the State did not intentionally provoke a
defendant to move for a mistrial, we view the evidence in the light most favorable
to the trial court’s ruling and will uphold the decision absent an abuse of
discretion.  Ex parte Masonheimer, 220 S.W.3d 494, 507–08 (Tex.
Crim. App. 2007); Ex parte Wheeler, 203 S.W.3d 317, 324 (Tex. Crim.
App. 2006).

                    2.       Applicable
Law

          The
double jeopardy provisions of the federal and Texas constitutions protect a
citizen from repeated attempts at prosecution for the same criminal offense.
U.S. Const. amend. V; Tex. Const. art. I, § 14; Oregon v. Kennedy,
456 U.S. 667, 671, 102 S. Ct. 2083, 2087 (1982); Wheeler, 203
S.W.3d at 322.  But if a defendant requests a mistrial, double jeopardy
normally does not bar reprosecution.  Kennedy, 456 U.S. at 672–73, 102
S. Ct. at 2088.  When a trial court grants a defendant’s motion for
mistrial, retrial is barred only if the prosecutor intentionally caused the
mistrial.  Id. at 675–76, 102 S. Ct. at 2089; Ex parte Lewis,
219 S.W.3d 335, 370–71 (Tex. Crim. App. 2007) (adopting Kennedy standard
for determining when to grant double jeopardy relief under Texas constitution
after a defense-requested mistrial and overruling Bauder v. State, 921
S.W.2d 696, 698–99 (Tex. Crim. App. 1996), which barred retrials when the
prosecutor was aware but consciously disregarded the risk that his conduct
would require a mistrial at the defendant’s request).

          The
exception to the general rule that double jeopardy protections do not bar a
retrial when the defense requested a mistrial is “narrow.”  Kennedy, 456
U.S. at 673, 102 S. Ct. at 2088; see also Masonheimer, 220 S.W.3d at
506.  Thus, prosecutorial conduct that might be viewed as harassment or
overreaching, even if sufficient to justify a mistrial on defendant’s motion,
does not bar retrial absent intent on the part of the prosecutor to subvert the
protections afforded by the Double Jeopardy Clause.  Kennedy, 456 U.S.
at 675–76.

          Trial
courts are in the best position to determine whether a prosecutor’s conduct
evinces intent to cause a mistrial, and Texas provides defendants with the
opportunity to litigate the question in the trial forum.  Lewis, 219
S.W.3d at 362.  Accordingly, the Texas Court of Criminal Appeals has
stressed the importance of deferring to the trial court’s assessment of facts, including
the prosecutor’s state of mind.  See Wheeler, 203 S.W.3d at 322–24; Ex parte
Peterson, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), overruled on other
grounds by Lewis, 219 S.W.3d 335.

                    3.       Analysis

          Razo
points to four instances that collectively amounted to the prosecutor’s alleged
intentional provocation of Razo’s request for a mistrial.  Viewing the evidence
in the light most favorable to the verdict, Razo conceded that the first
instance did not involve intentional conduct and that the second instance did
not involve a reference to an extraneous offense.  After the third instance,
the prosecutor led the witness through a series of questions outside the jury’s
presence to make sure that the witness did not say something that he should
not.  As for the fourth incident, the prosecutor merely asked whether anyone
else was present at the scene, and therefore did not elicit the witness’s
response as to why one of the persons was present.

          Further,
the prosecutor had instructed all of his witnesses to only discuss the case at
hand; and even after the trial court granted Razo’s motion for mistrial, the
prosecutor continued to attempt to persuade the court that a mistrial was
improper.  Most importantly, the trial court ruled, without objection, that the
prosecutor did not intentionally provoke Razo into moving for a mistrial.

          Thus,
the trial court did not abuse its discretion in ruling that the prosecutor did
not intentionally provoke Razo to move for a mistrial because the prosecutor took
steps to avoid any discussion of extraneous offenses, the witnesses’ references
to extraneous offenses were nonresponsive as to the prosecutor’s questions, and
the prosecutor repeatedly resisted the granting of the mistrial.  See Ex parte
Washington, 168 S.W.3d 227, 238–39 (Tex. App.—Fort Worth 2005, no pet.)
(concluding that prosecution did not intentionally provoke mistrial so as to
bar retrial when defense-requested mistrial was prompted by nonresponsive
answers of prosecution’s witnesses and prosecution had instructed witnesses not
to gratuitously mention impermissible evidence).  Giving the appropriate
deference to the trial court’s ruling, we hold that the trial court’s granting
of a mistrial at the defendant’s request did not bar a retrial and that therefore
Razo’s double jeopardy rights were not violated.  Razo’s first issue is
overruled.

          B.      Sufficiency
of the Evidence

          In
his second issue, Razo contends that there is insufficient evidence to support
his conviction for aggravated robbery.  A person commits the offense of robbery
if, in the course of committing a theft and with intent to obtain or maintain
control of the property, he intentionally or knowingly threatens or places
another in fear of imminent bodily injury or death.  Tex. Penal Code Ann. § 29.02(a)(2)
(West 2011).  The offense becomes aggravated if the person committing robbery
uses or exhibits a deadly weapon, or causes bodily injury to another person or
threatens or places another person in fear of imminent bodily injury or death
if the other person is 65 years of age or older.  Id. § 29.03(a)(2),
(3)(A) (West 2011).  Razo does not dispute that an aggravated robbery occurred;
rather, he contends that the evidence is insufficient to identify him as one of
the perpetrators.  We disagree.

                    1.       Standard
of Review

          In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v.
State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

          This
standard gives full play to the responsibility of the trier of fact to resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Isassi, 330 S.W.3d at 638.  The trier of
fact is the sole judge of the weight and credibility of the evidence.  See Tex.
Code Crim. Proc. Ann. art. 38.04 (West 1979); Brown v. State, 270 S.W.3d
564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).  Thus, when performing an evidentiary sufficiency review, we may not
re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the factfinder.  Williams v. State, 235 S.W.3d 742,
750 (Tex. Crim. App. 2007).  Instead, we “determine whether the necessary
inferences are reasonable based upon the combined and cumulative force of all
the evidence when viewed in the light most favorable to the verdict.”  Hooper
v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting interests in favor of the verdict and
defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Isassi, 330 S.W.3d at 638.

          The
standard of review is the same for direct and circumstantial evidence cases;
circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor.  Isassi, 330 S.W.3d at 638; Hooper, 214 S.W.3d
at 13.  Each fact need not point directly and independently to the guilt of the
defendant as long as the cumulative force of all the incriminating
circumstances is sufficient to support the conviction.  Hooper, 214
S.W.3d at 13.  Further, the prosecution need not exclude every other reasonable
hypothesis except the guilt of the accused.  Wilson v. State, 7 S.W.3d 136,
141 (Tex. Crim. App. 1999); see also Merritt v. State, No. PD-0916-11,
2012 WL 1314095, at *10 (Tex. Crim. App. Apr. 18, 2012) (holding that
appellate court improperly acted as thirteenth juror in sufficiency of evidence
review when it speculated and focused on existence of a reasonable hypothesis
inconsistent with guilt of accused).

                    2.       Analysis

          Viewing
the evidence in the light most favorable to the verdict, the record
demonstrates that at least two intruders came into Burk’s home and attacked
him.  When police officers arrived at Burk’s house, they discovered that his
truck was not there; the garage door was busted in and broken; the house was
ransacked; and there was blood in the hallway, bathroom, and bedroom.  Police
officers stopped Razo a few hours after Burk was assaulted and robbed and
discovered that Razo had blood on his jacket that was later determined to be
Burk’s.  Burk’s saxophone, miscellaneous tools, and personal mail were in the
trunk of the car Razo was driving.  The officers also found bloody gloves on
the seats and a pistol, the handle of a trench knife, and Burk’s Social Security
card in the pocket of one of the other occupants in the car.  Finally, a shoe
print taken from the broken door was later found to have enough individualizing
characteristics for a trace evidence analyst to conclude that the print
probably came from the shoes Razo was wearing the night he was arrested.  Thus,
the combined and cumulative force of all the incriminating circumstances
permits the reasonable inference that Razo was one of the perpetrators.

          To
support Razo’s contention that there is insufficient evidence to identify Razo
as one of the perpetrators, Razo points to the facts that Burk was unable to
identify Razo in a photo line-up and that Burk initially described the suspects
as black or dark-skinned.[2]  But Burk, at eighty-five
years old, was attacked in the very early morning while he was asleep and was
beaten to the point that his eyes were swollen shut.  It is reasonable to assume
that Burk’s recollection of the appearance of his assailants could be
inaccurate, and such a discrepancy does not render the jury’s finding improper
in light of the additional evidence linking Razo to the crime.

          Razo
also argues that there is a possibility that the two other occupants in the car
committed the robbery and later met up with Razo because the victim said there
were only two assailants and because one of the occupants in the car was the
one found with the revolver, the handle of the trench knife, and Burk’s Social Security
card.  Razo further hypothesizes that Burk’s blood could have gotten on Razo’s
jacket if either of the other two occupants of the car “disdainfully tossed”
the gloves at Razo after they committed the robbery.  But it is the jury’s
prerogative to weigh the evidence and choose between conflicting theories of
the case, and they were free to decide whether to believe Razo’s theory.

          Thus,
a rational trier of fact could have found beyond a reasonable doubt that Razo committed
the aggravated robbery based on the evidence that the shoe print on Burk’s door
was probably Razo’s; Razo was driving a car containing Burk’s possessions; and
Burk’s blood was on Razo’s jacket the night of the robbery.  We hold that the
evidence was sufficient to support Razo’s conviction.  See Terry v. State,
No. 05-08-00165-CR, 2009 WL 1240132, at *2–3 (Tex. App.—Dallas May 7,
2009, pet. dism’d) (not designated for publication) (holding evidence
sufficient to support aggravated robbery conviction due to small blood stain on
defendant’s shoe matching victim’s blood and bloody footprint at scene with
similar tread to that on defendant’s shoe).  Razo’s second issue is
overruled.

          C.      Admissibility
of Videotape

          In
his third issue, Razo contends that the trial court erred by admitting the security
videotape from Joe’s Future Food Mart due to improper authentication.  Specifically,
Razo argues that Harry was not the proper witness because he was not present
when the alleged robbery occurred and had no specialized knowledge regarding
the maintenance of the camera.

          We
review a trial court’s ruling on authentication issues under an abuse of
discretion standard.  Angleton v. State, 971 S.W.2d 65, 67 (Tex. Crim.
App. 1998); Reavis v. State, 84 S.W.3d 716, 719 (Tex. App.—Fort Worth
2002, no pet.).  This standard requires an appellate court to uphold a trial
court’s admissibility decision if it is within the zone of reasonable
disagreement.  Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App.
2001).

          Texas
Rules of Evidence 901 establishes the authentication requirement for the
admissibility of evidence.  See Tex. R. Evid. 901; Angleton, 971
S.W.2d at 67.  The authentication requirement is satisfied by “evidence
sufficient to support a finding that the matter in question is what its
proponent claims.”  Tex. R. Evid. 901(a).  Additionally, Rule 901(b) provides a
nonexclusive list of methods to authenticate evidence.  Tex. R. Evid. 901(b).  One
such method is the testimony of a witness with knowledge that a matter is what
it is claimed to be.  Tex. R. Evid. 901(b)(1).

          In
Reavis v. State, we held that a trial court did not abuse its discretion
by admitting a security videotape in evidence even though the
authenticating witness—a store clerk—had not personally witnessed the events
depicted on the videotape.  Reavis, 84 S.W.3d at 719–20.  The clerk
testified that he loaded the videotape and pressed “record” the day of the
offense, he removed the videotape shortly after the offense and reviewed it
with police officers, and he reviewed it again before trial to ensure that it
had not been tampered with or altered.  Id.  The witness made no
reference to any specialized knowledge regarding the maintenance of the camera.
 See id. at 718. We held that this was sufficient evidence to
enable a reasonable juror to conclude the videotape was what the State claimed
it to be.  Id. at 718–19.

          Here,
Harry testified that the videotape security system properly and accurately
records the events that happen inside the store, he helped the police officer
locate the part of the tape the officer was looking for on the day of the
offense, he recognized his coworkers and various items inside the store on the
videotape, and he reviewed the videotape before trial.  The only distinction
with Reavis is that Harry did not actually start the recording the day
of the offense, but there is no evidence to suggest that the store’s videotape
security system required a manual start to begin recording.  Moreover, both
Harry and the certified forensic computer examiner who extracted the videotape
from the store’s security system testified that the system was working properly
and that the time depicted on the videotape was accurate other than being off
by one hour.  Thus, Harry had sufficient knowledge of the videotape security
system to testify that the videotape accurately depicted the events that
occurred in the store on the day of the robbery.

          Following
our reasoning in Reavis, the evidence was sufficient to support a
finding that the videotape was what the State claimed it to be, and therefore
the videotape was properly authenticated.  Thus, the trial court did not abuse
its discretion by admitting the videotape in evidence, and we overrule Razo’s
third issue.

IV.  Conclusion

          Having
overruled each of Razo’s issues, we affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL:  GARDNER, WALKER, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
August 9, 2012









[1]See Tex. R. App. P. 47.4.





[2] Razo asserts that there
is no evidence he is either black or dark-skinned.