02-09-192-CR















 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT
WORTH

 

NO.
02-09-00192-CR 

 


 
 
 Keith
 William Moore
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
 
 
 
 
 The
 State of Texas
 
 
  
 
 
 STATE 
 
 


------------

 

FROM THE 213th District Court OF Tarrant
COUNTY

------------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
Keith William Moore, proceeding pro se,[2]
appeals his conviction for evading arrest or detention using a vehicle, a truck
driven by Moore.  For this offense, Moore
was sentenced to thirty years’ imprisonment.  Moore raises seven issues in his appellate
brief.  He challenges the factual
sufficiency of the evidence to support his conviction and to establish that the
truck was a deadly weapon.  He complains
of the trial court’s admission of testimony that the fleeing truck caused other
wrecks.  He claims that the trial court
abused its discretion by admitting a photograph he claims was not properly
authenticated.  He argues that the trial
court erred by denying his request for a jury instruction on spoliation, that
the State’s failure to preserve clothing evidence denied him due process and a
fair trial, and that the State committed errors during its closing argument
that are “severe enough to warrant reversal.”  In a supplemental brief, Moore argues that the
deadly weapon issue was not properly before the jury because it had not been
joined between the State and Moore at trial. 
We will affirm.

II.  Factual Background

          Moore’s
conviction for evading arrest was based on the following testimony and
facts.  Several witnesses testified regarding
the police’s attempt to pull over the truck allegedly driven by Moore, the
subsequent police chase of the truck, and the ensuing manhunt that led to
Moore’s arrest.  Because Moore challenges
the sufficiency of his conviction, we set forth the witnesses’ testimony in
detail below.

          A.      The
Police Chase

1.       Officer Honea

Officer Nicholas Honea testified that
he was on patrol on December 29, 2007, and that he drove by a Motel 6 due to the
high volume of criminal activity reported there.  Officer Honea ran a license plate check on a
green GM pickup parked in the Motel 6 parking lot, and it came back as
stolen.  He reported the location of the
stolen truck to other officers and various officers posted themselves in strategic
locations to observe the truck and anyone entering it.

Officer Honea and his partner
Officer Banes positioned themselves in separate patrol cars at a Conoco station
south of Motel 6.  About fifteen or
twenty minutes elapsed and then Officer Banes saw the green truck driving
toward them.  Officers Honea and Banes
followed the green truck; Officer Honea pulled in behind the truck, and Officer
Banes drove down the service road.  According
to Officer Honea, both police vehicles turned on their sirens and their
overhead lights, but the green truck did not pull over.

Officer Honea’s lights shone into
the back of the green truck; he observed only one person, the driver, in the
truck.  The driver was wearing a white,
fitted baseball cap with an emblem on the back of it.

The truck’s driver stopped at a
stoplight, and then he stepped on the gas and did a 180-degree turn.  The truck ended up facing Officer Honea.  Officer Honea was close enough that he “could
see the whites of the driver’s eyes.” Officer Honea saw that the driver had
abnormally large ears and was wearing a white baseball cap, a hoodie, and a
white muscle shirt.[3]
 Officer Honea’s description of the
suspect was that he was “a white white male.”

The green truck’s engine revved,[4]
and the truck traveled directly toward Officer Honea’s patrol car.  Officer Honea said that he contemplated jumping
out of his vehicle and running because he “was scared of either
sustaining bodily injury, serious bodily injury, and/or death, whichever
would come first” from the impact of the truck with his car.  As the truck accelerated towards Officer
Honea, Officer Honea completely stopped his patrol car.  The truck avoided hitting the front of Officer
Honea’s patrol car by inches.  Despite
the existence of other avenues of escape, the truck accelerated into heavy
oncoming traffic, which Officer Honea considered to be deadly conduct.  Officer Honea said that the driver never made
an effort to get into the correct lane of travel “to prevent anybody else from
being injured from his deadly conduct.”  Officer
Honea testified that he was unsure of how many wrecks the driver caused because
he was not the officer who worked the accidents. 

Officer Honea turned around and
attempted to catch up with the driver of the truck.  Another officer, Officer Tyler, announced over
the radio that the stolen truck had crashed into a building, and he gave the
location.  Officer Honea arrived at the
crash scene and saw the driver exit the truck, wearing the jacket with the hood
flipped up over his head.  The driver was
wearing white tennis shoes and blue jeans and was fairly pale.  The driver fled on foot, and Officer Honea
jumped a curb in his patrol car in an attempt to follow him.[5] 

A short time later, Officer Vasquez
located a man suspected of being the driver of the green truck at a residence
on 2305 Irion.  Officer Honea went to
that address and immediately recognized the person at the scene as the driver
of the green truck and identified him;[6]
Officer Honea also identified Moore in the courtroom.

Officer Honea learned that a hat and
a jacket were found in a grill outside a residence on Irion, and Officer Honea testified
that he assumed Officer Banes had found the objects.  Officer Honea said that they took pictures of
the hat and jacket and gave them back to Moore.  Officer Honea put the hat on Moore and said
that it was a perfect fit, but Moore would not put on the jacket.  Officer Honea said that Moore told him that the
hat and jacket were not his. 

The officers did not call a
fingerprint expert to lift fingerprints from the truck, and they did not call
anyone to obtain DNA evidence from the hat or the jacket.

Officer Honea observed the driver of
the green truck commit several traffic violations during the chase:  Moore failed to yield to emergency vehicles,
failed to control speed, drove on the incorrect side of the street, caused
several hit-and-run accidents, and hit a building and ran from the scene.  From what Officer Honea observed during the
pursuit, all of the acts by Moore were intentional acts to flee from the police
officers using a vehicle.  Officer Honea
testified that the manner in which the truck was used by Moore could have
caused serious bodily injury or death to other drivers in that area and that it
could have caused serious bodily injury or death to Officer Honea and other
officers in the area. 

                   2.       Officer
Banes

Officer Scott Banes testified that
on December 29, 2007, he was called by another officer to assist with a
possible stolen vehicle.  Although the possible
stolen vehicle was found at the Motel 6 at 3271 North Freeway, Officer Banes
met up with Officer Honea at a gas station a block south of that location.  On his way to meet Officer Honea, Officer
Banes drove by the Motel 6 and saw the possible stolen vehicle, which was a
dark green GMC pickup truck with chrome wheels.  When Officer Banes met up with Officer Honea,
they discussed their strategy and then saw the stolen vehicle pull out of the
parking lot at Motel 6. 

Officer Banes and Officer Honea followed
the stolen vehicle in their patrol cars and attempted to initiate a traffic
stop on the freeway by activating the overhead lights on both of their patrol
cars.  Officer Banes did not feel that
the driver was evading arrest or detention while they were on the freeway
because the driver took the first available exit at Northeast 28th Street.  After exiting, however, the driver did not
pull over even though there were safe places to pull over.  At that point, Officer Banes started to think
that the driver of the truck was not going to stop.

Officer Banes activated his siren
three or four blocks south of Northeast 28th Street because he wanted the
driver to stop right then.  The driver
did not stop but instead overaccelerated and spun
around.  The driver sat still for a few
seconds and then accelerated the truck and “came flying straight towards
Officer Honea[’s] . . . patrol car.”  Officer Tyler was positioned at the right rear
of Officer Honea’s patrol car and considered using deadly force against the driver
to protect Officer Honea.  Officer Banes
testified that, based on the acceleration of the green truck, if the truck had
hit Officer Honea’s car, the collision could have caused serious bodily injury
or death to Officer Honea. 

Officer Honea and Officer Banes
turned around to follow the green truck, and Officer Banes put out an alert
over the radio that the green truck was traveling westbound in the eastbound
lanes.  Officer Banes testified that the
truck left rapidly, “[H]e floored it”; “[y]ou could
hear the exhaust screaming.”  Officer
Banes testified that the speed limit on that road was forty miles per hour,
that he (Officer Banes) was traveling at fifty miles per hour, and that the
green truck was pulling away from him “pretty quickly.” 

Officer Tyler responded to Officer Banes’s radio alert and announced over the radio that the
truck had attempted a turn onto Grover and had crashed into a building.  Officer Banes saw that the truck had crashed
into the building and that there was a “smoldering wreck.”  Officer Banes did not see anyone in the truck.

Officer Banes decided to set up a
perimeter as other officers began calling out a description of the
suspect:  a white male, pale skin, thin
build, white muscle shirt, and big ears.  Officer Banes eventually heard that a suspect
had been detained a block and a half from where the green truck had crashed.  Officer Banes went to that location and saw
that there was a suspect in custody who matched the description that had been
given over the radio, except that he was not wearing a hoodie and a cap like
the broadcast had mentioned.  Officer
Banes thought it was odd that Moore was wearing a tank top because the
temperature was in the forties.  Officer
Banes identified Moore in the courtroom as the suspect that he saw detained on
December 29, 2007. 

Officer Banes continued the
investigation by speaking with a couple who lived at 2305 Irion.  He looked in their backyard and found a black
hoodie and a white baseball cap in their barbecue pit.  Officer Banes reviewed the photographs labeled
as State’s Exhibit 1 and 2 and testified that he was the one who took the photos
and collected the evidence that was depicted in the photos.  The fitted baseball hat fit the suspect and
was returned to him at the scene.  The
defense showed Officer Banes a jacket, but he did not recognize it as the one
that he had found on the night in question.  Officer Banes could not recall whether Moore
denied ownership of the jacket and baseball cap, but he recalled that Moore accepted
them when police returned them to him. 

                   3.       Officer
Tyler

On the evening of December 29, 2007,
Officer Michael Tyler was contacted by Officer Honea.  In response, Officer Tyler went to a Motel 6
at 3271 North Freeway because Officer Honea had found an unoccupied stolen
vehicle. Officer Tyler set up a north perimeter to watch the unoccupied vehicle
in case anyone approached and drove it away.

At 6:34 p.m., the vehicle, which was a 2005 green GMC pickup, left the north exit and headed
southbound.  Officer Tyler
notified Officer Honea and Officer Banes, who were set up towards the freeway,
that the vehicle was headed towards them.  Officer Tyler saw Officers Honea and Banes
pull out behind the vehicle, and he saw Officer Honea turn on the overhead
lights on his patrol car.  The stolen
vehicle failed to stop and kept traveling southbound through heavy traffic.  Officer Tyler saw the stolen vehicle run a red
light and fail to stop even though there were numerous places where he could
have pulled over.

As the stolen vehicle attempted to turn
eastbound onto 28th Street, the driver lost control, and the vehicle spun
around 180 degrees; it was facing westbound in the eastbound lanes of traffic.  Officer Honea and Officer Banes also turned
onto 28th Street and attempted to block the stolen vehicle in, but the stolen
vehicle accelerated and went between them, “real close by Officer Honea’s car,”
and continued westbound in the eastbound lanes of traffic (i.e., going the wrong
way). 

Officer Tyler took control of the
pursuit from there and continued eastbound in the correct lanes of traffic.  The driver of the stolen vehicle attempted to
turn southbound onto Grover from 28th Street, lost control, and hit the
building at 2306 Northeast 28th Street.[7]  Officer Tyler saw the driver of the stolen
vehicle[8]
exit the driver’s side of the truck and run southbound on Grover, which is near
Irion Street.  Officer Tyler did not see
anyone else exit the truck.

After Officer Tyler saw the driver
bail out of the stolen vehicle, he pulled in behind the vehicle, confirmed that
there were no other people in it, and obtained a description of the driver.  Officer Tyler said that the description of the
driver that he put out that night was “[t]all white male, white baseball cap,
dark jacket with a hoodie, blue jeans and white shoes.”  Officer Tyler believed that Moore had on a
white shirt under his jacket.  Officer
Tyler testified that after the arrest, Moore was not wearing a cap, and Officer
Tyler could see that he had a shaved head.

Officer Tyler testified that the
following acts committed by Moore constituted dangerous acts that could cause
serious bodily injury or death: running a red light in heavy traffic, losing
control of a truck and spinning out 180 degrees in heavy traffic, losing
control of a truck and hitting a building, and driving into oncoming traffic
during heavy traffic.  Officer Tyler further
testified that, in his opinion, the truck was used as a deadly weapon––that is,
in the manner of its use, it was capable of causing serious bodily injury or
death.

                   4.       Officer
Vasquez

Officer Jose Vasquez testified that
on December 29, 2007, he received a dispatch to respond to Irion Street where
two officers were in pursuit of a truck coming from the Motel 6 down 28th
Street.  Officer Vasquez’s duty was to
warn drivers to get out of the way because the driver of the truck was going
the wrong way on 28th Street and was being pursued by officers.  Officer Vasquez’s understanding from radio traffic
was that Moore had already tried to ram a patrol car and had come close to
ramming the police officer.  Based on
what Officer Vasquez heard over the radio, he responded to the area where the vehicle
had “wrecked out.”  He saw a green pickup
had hit a building and noted that it matched the description of the dispatch. 

Officer Vasquez had knowledge that
the driver of the truck had fled on foot and that he was a white male who was
seen wearing a baseball hat.  Officer
Vasquez started knocking on some doors and driving around the area, looking for
the driver.

Officer Vasquez was flagged down by
a Hispanic male in the 2300 block of Irion who said that a white male wearing a
white muscle shirt had been sitting on the steps of
his detached garage.  Officer Vasquez
said that although the Hispanic male spoke mostly Spanish, Officer Vasquez
determined that he was saying that the white male did not belong on his steps.

Officer Vasquez drove in the
direction that the witness had flagged him down, went down about two houses,
and observed a white male with a bald head and big
ears who was wearing a white tank top t-shirt and blue jeans.  Officer Vasquez recalled that it “was pretty
cold” that night and that it was too cold to be wearing a tank top, which
heightened his desire to speak with the individual. Officer Vasquez said that
Moore was panting, like he had been running, and that he looked scared.  Officer Vasquez approached Moore and asked him
if he lived nearby.  Moore pointed to a
house from which a white couple was exiting, and the couple had a concerned
look on their faces.  Officer Vasquez
confirmed that Moore did not live there.

On cross-examination, Officer
Vasquez testified that the description he had heard over the radio was a white
male, wearing a hoodie and a baseball cap. Officer Vasquez admitted that the
man he found was not wearing a hoodie or a baseball cap. 

                    5.       Esmerelda Estrada

On the night of December 29, 2007,
Esmerelda Estrada was in her apartment on Irion Street, lying down with her
baby, when she saw a young man peek through her window and move the handle of
the door to her house. Esmerelda told her husband
that there was a young man outside and to go see who it was.  The young man was white and had on a white
sleeveless shirt (like a tank top), which Esmerelda thought was strange because
it was very cold outside.  She did not
see a hat.

                    6.       Antonio Estrada

Antonio Estrada testified that he
and his wife were in their living room watching television on December 29,
2007, when his wife saw someone trying to open the door.  Antonio went outside to see who the person was
and saw a person sitting on the stairs outside his garage. 

Antonio described the person as “a
white boy,” who was bald headed and was wearing a tank top.[9]  Antonio asked the boy what he was doing, and
he said, “The cops are looking for me.”  Antonio
heard police cars going around the neighborhood and a helicopter flying
overhead.  Antonio told the boy “to get
out of here,” and he left.  Antonio said
that a squad car had been sitting nearby, pointing its lights toward his
garage, so the police immediately caught the boy. Antonio testified that the
man whom the police arrested was the same boy that Antonio had seen sitting on the
stairs outside his garage.  Antonio said
that he recalled Moore because he had seen him “face to face.” 

After the police left, Antonio went
out to his grill and found a hat and a shirt that did not belong to him.  Antonio told the police that he found the
jacket and the hat.

B.      Moore’s Mother

Diana Hooper, Moore’s mother, admitted
that she did not know anything about the offense that Moore was on trial for
and that she was testifying because he is her son and because she does not want
to see anything bad happen to him.  She testified
that Moore was undergoing chemotherapy in December 2007 and that it made him
“really, really hot one minute, wanting the air on, to really, really cold,
wanting the heat on.  He would go outside
without a jacket.”  Hooper testified that
Moore also experienced shortness of breath and heavy breathing because the
chemo made him “really sick.”  She said
that he “was too sick to do much of anything.” 
Hooper did not know why Moore would have been hiding in the Estradas’ backyard because the side effects from the chemo
would not have caused him to wander into people’s backyards. 

          C.      Disposition

          After
hearing the above evidence, the jury found Moore guilty of the offense of
evading arrest or detention using a vehicle and assessed his punishment at
thirty years’ confinement.  The trial
court sentenced Moore accordingly.  This
appeal followed.

III.  Sufficient Evidence Supports Moore’s
Conviction

          In his
first issue, Moore argues that the evidence is factually insufficient to
support his conviction for evading arrest or detention using a motor vehicle. Specifically,
Moore argues that there was “very little evidence showing that he was the
suspect driver.”  In his second issue,
Moore argues that the evidence is factually insufficient to support a finding that
the truck was a deadly weapon. 

          A.      Standard
of Review

          The Texas Court of Criminal Appeals recently abrogated the
factual sufficiency standard of review. 
The court held in Brooks v. State,
No. PD-0210-09, 2010 WL 3894613, at *14 (Tex. Crim. App. Oct. 6, 2010), that there
is no meaningful distinction between the factual sufficiency standard of review
and the legal sufficiency standard of review; both apply the Jackson
v. Virginia standard.   443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  Accordingly, we analyze Moore’s
factual sufficiency challenges by viewing all of the evidence in the light
most favorable to the prosecution to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772,
778 (Tex. Crim. App. 2007).

          B.      Law
on Evading Arrest or Detention with a Vehicle

          A
person commits the state jail felony offense of evading arrest if he
intentionally flees, in a vehicle, from a person that he knows is a peace
officer lawfully attempting to arrest or detain him.  See
Tex. Penal Code Ann. § 38.04(a),
(b)(1) (Vernon 2003); Guillory v. State, 99 S.W.3d 735, 741 (Tex. App.––Houston [1st
Dist.] 2003, pet. ref’d).

          C.      Law
on Deadly Weapon

          A
deadly weapon is “anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury.”  Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp.
2010).  To determine whether the evidence
supports a deadly weapon finding in cases involving motor vehicles, we conduct
a two-part analysis.  Hilburn v. State, 312 S.W.3d 169,
177 (Tex. App.––Fort Worth 2010, no pet.) (citing
Sierra v. State, 280 S.W.3d 250, 255
(Tex. Crim. App. 2009)).  We first
“evaluate the manner in which the defendant used the motor vehicle during the
felony.”  Sierra, 280 S.W.3d at 255.  We then “consider whether, during the felony,
the motor vehicle was capable of causing death or serious bodily injury.”  Id.

          In
examining the manner in which the defendant operated the vehicle, we evaluate
whether the driving was reckless or dangerous. 
Id.  We consider several factors in examining
whether a defendant’s driving was reckless or dangerous:  (1) intoxication; (2) speeding; (3)
disregarding traffic signs and signals; (4) driving erratically; and (5)
failure to control the vehicle.  Id. at 255–56.

D.      Sufficiency Analyses

 

          1.       Sufficient
Evidence Exists to Support Moore’s Conviction 

 

          With
regard to Moore’s sufficiency challenge to his conviction, the record, as set
forth above, contains testimony from several officers regarding their pursuit
of Moore while he was driving the stolen green truck.  The record reveals that Officer Honea and
Officer Banes had their patrol cars’ overhead lights turned on as they pursued
Moore from the freeway onto the exit for Northeast 28th Street.  As the officers followed him, after he took
the exit for Northeast 28th Street, they also turned on their sirens. Moore stopped
at a stoplight briefly before accelerating and doing a 180-degree turn.  Instead of stopping at that point because he
was now facing the wrong direction, into traffic, Moore drove right toward
Officer Honea’s patrol car.  He was so
close that Officer Honea “could see the whites of his eyes.”  Moore accelerated into heavy oncoming traffic to
get away from the officers who were pursuing him.  Moore crashed the truck into a building and
then fled on foot.  Officer Tyler saw the
driver exit the truck; no other person exited the truck.  Officer Tyler broadcast a description of the
driver.

When police apprehended Moore, he
was out of breath and appeared scared; just moments before that, Moore had told
Mr. Estrada that the police were looking for him.  Officer Honea identified Moore at the scene as
the driver of the green truck, and both Officer Honea and Officer Tyler
identified Moore in court as the driver of the green truck.  Officer Honea also testified that all of the
acts that he observed Moore commit during the pursuit were intentional acts to
flee from the police officers while using a vehicle.  Moreover, the record, as a whole, reveals that
Moore had numerous opportunities to pull over but instead chose to flee from
the officers, in spite of their flashing lights and blaring sirens indicating that
they wanted to detain him.

Viewing the evidence in the light
most favorable to the prosecution, a rational factfinder
could have determined beyond a reasonable doubt that Moore was the driver of
the green truck and used the truck to intentionally flee from Officers Honea,
Banes, and Tyler, who were lawfully attempting to arrest or detain him.  See
Tex. Penal Code Ann. § 38.04(a), (b)(1); ­­­­­­­­­­­­­­­­­­­­­Vann v. State, 216 S.W.3d 881, 889 (Tex.
App.––Fort Worth 2007, no pet.) (holding that evidence was legally sufficient
to support jury’s verdict that appellant fled from police officers who were
legally attempting to detain him; during a high-speed chase, officers spotted
appellant slide into the driver’s seat and take control of the vehicle for a
few miles before the engine blew).  We
overrule Moore’s first issue.

2.       Sufficient Evidence Exists to Support the
Deadly Weapon Finding[10]

 

With regard to Moore’s sufficiency
challenge to the deadly weapon finding, the record contains overwhelming
evidence that Moore drove the truck in a reckless or dangerous manner and that
the truck was capable of causing death or serious bodily injury.  The record demonstrates that Moore drove in a
reckless or dangerous manner when he failed to control his speed and when he overaccelerated the truck and spun around, as well as when
he crashed the truck into a building; when he drove into oncoming heavy traffic
in the wrong lane and never made an effort to get into the correct lane; when he
drove directly at Officer Honea’s patrol car and missed hitting the front of it
by inches; and when he caused several accidents and drove away from them.  The record also reveals that the green truck,
which was described as “a pretty powerful truck,” was capable of causing death
or serious bodily injury because Officers Honea, Banes, and Tyler all testified
that the manner in which Moore drove the truck––by driving it at Officer
Honea’s patrol car and into heavy oncoming traffic––could have caused death or
serious bodily injury.  Specifically, Officer
Honea testified that he was scared he would sustain serious bodily injury or
death when Moore drove the truck toward his patrol car.

Viewing the evidence in the light
most favorable to the prosecution, a rational factfinder
could have determined beyond a reasonable doubt that Moore used the green truck
in a manner capable of causing death or serious bodily injury.  See Tex.
Penal Code Ann. § 1.07(a)(17)(B); Sierra, 280 S.W.3d at 256 (holding
evidence of deadly weapon legally sufficient when defendant exceeded speed
limit, failed to maintain control of his SUV, and in fact caused serious bodily
injury to another); Cook v. State, No.
02-09-00036-CR, 2010 WL 3504222, at *4–5 (Tex. App.––Fort Worth Sept. 9, 2010,
no pet. h.) (holding that evidence was legally sufficient to support trial
court’s deadly weapon finding when defendant was driving while intoxicated, was
speeding, and did not apply her brakes prior to or after veering off the road
and running into a person).  We overrule
Moore’s second issue.

IV. 
Photograph Was Properly Authenticated

          In his
fourth issue, Moore argues that the trial court abused its discretion by
admitting State’s Exhibit 1, a photograph depicting Antonio Estrada’s grill
with a shirt on it, over his objection that it had not been properly authenticated.

A trial court’s decision as to
whether evidence is properly authenticated is reviewed under the same abuse of
discretion standard as the admissibility of evidence.  See
Angleton v. State, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998); Smith v. State, 683 S.W.2d 393, 404
(Tex. Crim. App. 1984); Reavis v. State, 84 S.W.3d 716, 719–20 (Tex.
App.––Fort Worth 2002, no pet.).  The
authentication requirement for admissibility does not require the predicate
from someone with personal knowledge of where or when the photograph was made;
rather it “is satisfied by evidence sufficient to support a finding that the
matter in question is what its proponent claims.”  Tex. R. Evid.
901(a); Reavis,
84 S.W.3d at 719.  Rule 901(b) provides a nonexclusive list of
methods for authenticating evidence that includes testimony of a witness with
knowledge that a matter is what “it is claimed to be,” and distinctive
characteristics of the evidence, including “appearance, contents, substance,
internal patterns, or other distinctive characteristics, taken in conjunction
with circumstances.”  Tex.
R. Evid. 901(b)(1),
(4); Reavis, 84
S.W.3d at 719. 
Testimony that the photograph is what it purports to be is sufficient to
authenticate the photograph; the accuracy of the testimony is a question for
the jury.  Reavis, 84 S.W.3d at 719. 
If a verbal description of the material portrayed is admissible, then a
photograph reflecting the verbal testimony is admissible.  Wilkerson
v. State, 726 S.W.2d 542, 547 (Tex. Crim. App. 1986), cert. denied, 480 U.S. 940 (1987). A trial court does not abuse its
discretion by admitting evidence when it reasonably believes that a reasonable
juror could find that the evidence has been authenticated or identified.  Druery v. State,
225 S.W.3d 491, 502 (Tex. Crim. App.), cert.
denied, 552 U.S. 1028 (2007).

Here, the record contains the
following with regard to the State’s authentication of State’s Exhibit 1 by Mr.
Estrada:[11]

[PROSECUTOR]:  Your
Honor, may I approach?

THE COURT:  Yes, you
may.

Q.  Mr. Estrada,
I’m showing you what’s been previously marked as State’s Exhibit No. 1 and
State’s Exhibit No. 2.  Do you recognize
these?

A.  That is a
big grill that I have in my house to grill meat.

Q. 
Does State’s Exhibit 1 and State’s Exhibit 2 fairly and
accurately depict your grill as it appeared on December 29th, 2007?

A.  Yes.

Q.  Thank you
very much. 

Thereafter, the State attempted to offer two
photographs of the grill––State’s Exhibit 1 and 2––into evidence, and Moore’s
counsel asked to take Mr. Estrada on voir dire. 

BY [DEFENSE COUNSEL]:

Q.  In State’s
Exhibit 2, is this part of your grill?

A.  The hat,
no.  The other, yes.

Q.  Is that part
of your grill?

A.  No.  I cannot really look at it very well because
of the light it reflect[s].  But after
the police left, I went to see into it, and there was the hat and there was
this shirt.  But that’s my grill,
yes.  It is my grill.

Q.  What is
this?

A.  There was a
hat and a shirt that was in there.

Q.  Is this the
shirt?

A.  I don’t
know.  I cannot really make it out.  I cannot tell you right now what it is
because I cannot make it out.

[DEFENSE COUNSEL]:  Your Honor, I’ll object to State[’]s
Exhibit 1 on the basis that it’s not showing his grill as he recognizes it. 

Q.  And with
regard to State’s Exhibit 2, was this hat in the grill when you looked at it?

A.  Yes.

Q.  When was
that?

A.  When was
that?  When I saw him.

Q.  You were
looking at this hat when you were looking at him in the garage?

A.  No.  He wasn’t wearing a hat.  At that time he was bald headed.

          [DEFENSE
COUNSEL]:  Your Honor, I’m going to
object to State’s Exhibit 1 and 2 on the basis it does not appear to be the
grill that he described that he – it appears to be pictures of something in
something that he can’t describe.

          THE
COURT:  All right.  Let me see the exhibits.

          All right.  Your
objections are overruled.

State’s
Exhibits 1 and 2 are admitted into evidence. 

Moore thereafter requested a running objection, which
the trial court granted. 

          As set
forth above, Mr. Estrada testified on direct examination that the photographs
accurately depicted his grill with a hat and a shirt[12]
on it on the night in question, which was enough by itself to authenticate the
photograph.  See Reavis, 84 S.W.3d
at 719 (recognizing that the ultimate test for authentication is that the
proponent of the evidence has made a showing sufficient to permit a reasonable
juror to find that the evidence is what its proponent claims).  Defense counsel’s questions on voir dire concerning the hat and the shirt did not
undermine or refute Mr. Estrada’s testimony that the picture accurately
depicted his grill on the night in question; although the photograph of the
grill was taken from a side angle, making it difficult to see the details of
the objects on the grill, Mr. Estrada testified that State’s Exhibit 1 was an
accurate portrayal of how his grill looked when he found the items on it.

          Even
assuming that the trial court abused its discretion by admitting State’s
Exhibit 1, any error was harmless.  See Quinonez-Saa
v. State, 860 S.W.2d 704, 707 (Tex. App.––Houston [1st Dist.] 1993, pet. ref’d) (holding that error, if any, from the admission of
the autopsy photographs was harmless because the photographs were not the only
evidence that established the close range of the gunshot wound to the
complainant’s head).  Officer Honea testified
without objection that he saw Moore wearing a hat and a jacket (referred to by
Mr. Estrada as a “shirt”) while he was driving; that a hat and a jacket were
found on a grill at a residence; that he gave Moore the hat and the jacket, and
Moore accepted them; and that the hat fit Moore, but Moore would not put on the
jacket.  Because a photograph is merely a
graphic portrayal of facts that may be proved by oral testimony and because unobjected-to testimony at trial indicated Moore was wearing
a jacket or a “shirt”––like the one found in the grill––while he was driving,
any error in admitting the photograph was harmless.  Cf.
Davis v. State, 687 S.W.2d 78, 82 (Tex. App.—Dallas 1985, pet. ref’d) (holding that
trial court did not err by admitting photographs that depicted complainant’s
condition because several witnesses testified to complainant’s appearance
without objection).  We therefore
overrule Moore’s fourth issue.

V.  No
Jury Instruction on Spoliation Mandated Under the Circumstances

          In his
fifth issue, Moore argues that the trial court erred by denying his request for
a jury instruction on spoliation because the Fort Worth Police Department
failed to preserve the hat and the jacket that were involved in the case.

          Any
federal constitutional duty to preserve evidence is limited to evidence that might be expected to play a significant role in the
suspect’s defense.  California v. Trombetta,
467 U.S. 479, 488, 104 S. Ct. 2528, 2534 (1984).  “To meet this standard of constitutional
materiality, evidence must both possess an exculpatory value that was apparent
before the evidence was destroyed, and be of such a nature that the defendant
would be unable to obtain comparable evidence by other reasonably available
means.”  Id. at 489, 104 S. Ct. at 2534 (citation
omitted).  “[U]nless
a criminal defendant can show bad faith on the part of the police, failure to
preserve potentially useful evidence does not constitute a denial of due
process of law.”  Arizona v. Youngblood, 488 U.S. 51, 58,
109 S. Ct. 333, 337 (1988).

          Here,
the record reveals that Officer Honea testified, “We took pictures of the hat
and jacket.  And after we were done
taking pictures of it, we gave it back to the arrested person.”  Thus, according to police, Moore received
possession of the items that he claims police should have preserved.  No evidence exists in the record that police
destroyed or spoliated evidence; they gave the items
to Moore at the scene.  Furthermore,
neither the shirt nor the hat constitute exculpatory
evidence; that is, even if these items had contained DNA not belonging to
Moore, it would not prove Moore had not worn them on the night in
question.  A defendant is not entitled to
a spoliation instruction when there is no showing that the evidence was
exculpatory or that there was bad faith on the part of the State in connection
with its loss.  White v. State, 125 S.W.3d 41, 43–44
(Tex. App.––Houston [14th Dist.] 2003), pet. ref’d,
149 S.W.3d 159 (Tex. Crim. App. 2004).  We hold that the trial court did not abuse its
discretion by denying Moore’s request for a spoliation instruction.  We overrule Moore’s fifth issue.

VI. 
Failure to Preserve Arguments

In his third issue, Moore argues
that the trial court erred by overruling his lack-of-personal-knowledge
objection to Officer Honea’s testimony that the green truck had caused other
wrecks that evening.  Officer Honea
testified that he was “unsure of how many wrecks [Moore’s driving] caused,
because I’m not the one who worked the wrecks.”  Officer Honea later testified, however, that
he saw the driver of the green truck do the following:

Failing to yield to emergency
vehicles, for one.  Operating a motor vehicle at a point to lose control -- failure to
control speed.  Drove
on the incorrect side of the street. 
Several hit-and-run accidents. Like I said, I’m
unsure of the number of accidents the vehicle caused.  And also hit a building and ran away from the
scene after hitting the building. 

In order to preserve error regarding
the admission of evidence, an appellant must make a timely objection to each
instance in which the objectionable testimony is elicited.  Ethington v. State, 819 S.W.2d
854, 858 (Tex. Crim. App. 1991). 
Any error in the admission of evidence is cured when the same evidence
comes in elsewhere without objection.  Id. Thus, when there is an objection to
the first question on a particular subject, but no objection to subsequent
questions on the same subject, no error is preserved regarding the admission of
testimony on that subject.  Id. at 859–60; see also Salazar v. State, 131 S.W.3d 210, 214–15 (Tex. App.––Fort
Worth 2004, pet. ref'd).  Because Officer Honea later testified without
objection to the same facts Moore now complains of, this complaint is not
preserved for our review.  We overrule
Moore’s third issue.

In his sixth issue, Moore argues
that the State’s failure to preserve the shirt/jacket and hat that was found on
the night of the offense denied him due process and a fair trial.  Moore admits that he did not raise a
constitutional objection at trial but claims that under Freeman v. State, 276 S.W.3d 630, 633–34 (Tex. App.––Waco 2008), pet. granted, judgm’t vacated, 286 S.W.3d
370 (Tex. Crim. App. 2009), his
request in asking for the spoliation instruction is sufficient to preserve his
complaint for review.  Moore’s reliance
on the first Freeman case is
misplaced because on remand from the Texas Court of Criminal Appeals, the Waco
Court of Appeals held that Freeman’s request for a spoliation instruction did
not preserve his constitutional complaint. 
Freeman v. State, No.
10-07-00363-CR, 2010 WL 199879, at *1 (Tex. App.––Waco Jan. 20) (op. on remand,
not designated for publication), pet. stricken, 2010 WL 3431134 (Tex. Crim. App. 2010).  Thus, because Moore failed to raise this due
process complaint in the trial court, it is not preserved for our review.  Tex. R. App. P. 33.1(a)(1); Mosley v.
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), cert. denied, 526 U.S. 1070 (1999)
(requiring a party to present to the trial court a timely request, objection,
or motion that states the specific grounds for the desired ruling in order to
preserve the complaint for appellate review).

In his seventh issue, Moore argues
that during the State’s summation and final argument in the guilt/innocence
phase, the State committed errors that were so severe they warrant reversal.[13]  Moore did not object to any of the statements he
now complains of that were made by the State during its closing arguments. Consequently,
these complaints are likewise not preserved for our review.  See Tex.
R. App. P. 33.1(a)(1).

VII.  Conclusion

          Having
overruled all seven of Moore’s issues, we affirm the trial court’s judgment.

 

                                                                   SUE
WALKER

                                                                   JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

                                                              

DELIVERED:  November 18, 2010











[1]See
Tex. R. App. P. 47.4.





          [2]After
receiving a document from Moore entitled “Declaration of Conflict Between
Attorney And Client And Motion To Remove Appointed Counsel, Counsel’s Brief,
And To Proceed Pro Se On Appellate Brief,” we abated this appeal and requested
that the trial court hold a hearing in compliance with Faretta v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975), and
Hubbard v. State, 739 S.W.2d 341, 345
(Tex. Crim. App. 1987).  At the hearing,
the trial court admonished Moore on the dangers of self-representation, found
that he was competent to represent himself, and allowed Moore to proceed to
represent himself pro se.  Moore thereafter filed his pro se appellate
brief with this court.





          [3]Officer
Honea said that he could see the hood scrunched up behind the driver’s neck and
that he could not see if the shirt had sleeves on it but noted that it looked
like a muscle shirt. 

 





          [4]Officer
Honea agreed that the stolen vehicle was “a pretty powerful truck.” 





          [5]Officer
Honea explained that when he observed Moore running, he looked short because
“[h]e was not standing up walking as he normally would.”  Moore, however, was not a short person. 

 





          [6]The
in-car video from Officer Honea’s car was admitted into evidence.  It showed Officer Honea’s pursuit of the green
truck and clearly shows the driver is wearing a white baseball cap.  However, it is difficult to tell from the
video what clothes the driver is wearing.





          [7]Officer
Tyler testified that his patrol car had an in-car video but did not capture the
truck crashing into the building or the driver bailing out because it was not
facing that direction.

 





          [8]Officer
Tyler identified Moore in the courtroom as the driver of the stolen vehicle. 





          [9]
Antonio identified Moore in the courtroom as the boy he had seen on his stairs.






          [10]In his
supplemental brief, Moore argues that the deadly weapon issue was not properly
before the jury because it had not been joined between the State and Moore at
trial.  Specifically, Moore contends that
the State did not read the deadly weapon notice before the jury and that he did
not enter a plea of true or not true before the jury.  Moore’s arguments are not supported by the
record.  The indictment in the record
before us contains a deadly weapon notice. The record states that the
prosecutor read the indictment while the jury was present and that Moore
entered a plea of “not guilty.”  At the
conclusion of the trial, the jury found from the evidence beyond a reasonable doubt
that Moore used or exhibited a deadly weapon. 
Because the deadly weapon issue was properly before the jury, we
overrule Moore’s sole supplemental issue.





          [11]The
record reflects that Mr. Estrada spoke Spanish and that the parties utilized an
interpreter during his questioning.





          [12]Because
Mr. Estrada referred to the item as a “shirt,” we will use that term when
referring to his testimony, even though the officers described the item as a
“jacket” or a “hoodie.”





          [13]Moore
contends that the State twice told the jury that he had been found in the Estradas’ backyard and that the State told the jury that no
one––including Moore’s mother, friends, neighbors, or relatives––took the stand
and had “one good thing” to say about him.